Rawston *v.* Commissioner of Public Welfare.


FRANCES A. RAWSTON *vs.* COMMISSIONER OF PUBLIC
WELFARE.

MICHELLE DELL ISOLA *vs.* COMMISSIONER OF PUBLIC
WELFARE.

MONICA REPPUCCI *vs.* COMMISSIONER OF PUBLIC
WELFARE.

Suffolk. October 10, 1991. - June 9, 1992.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Aid to Families with Dependent Children.*

A parent who had physical custody of, but was not actually living with,
her dependent children was not eligible for benefits under the Aid to
Families with Dependent Children (AFDC) program, pursuant to 42
U.S.C. § 606 (a) (1), and G. L. c. 118, § 1, and respective regulations
thereunder. [780-784]

In a civil action in which the judge properly, on cross motions for summary
judgment, ruled in favor of the defendant Department of Public Wel-
fare on a review under G. L. c. 30A, § 14, of its administrative deci-
sion, the record did not demonstrate that the plaintiff was entitled to
declaratory or other relief on her other claims. [785]

A parent who did not have physical custody of her dependent child, pursu-
ant to a temporary order of the Probate and Family Court placing the
child with its paternal grandparents, was not "living with" the child,
and therefore the parent was not eligible for continued AFDC benefits.
[787]

A divorced parent who did not have care and custody of her dependent
child but had only visitation rights did not, in the circumstances, "live
with" the child and as a result was not entitled to AFDC benefits. [788-
789]


CIVIL ACTION commenced in the Superior Court Depart-
ment on July 27, 1989.

The case was heard by *Elizabeth B. Donovan*, J., on mo-
tions for summary judgment.

CIVIL ACTIONS commenced in the Superior Court Department on August 17, 1989, and July 10, 1989, respectively.

In each case a motion for summary judgment was heard by *Walter E. Steele*, J., and entry of partial final judgment was ordered by *J. Owen Todd*, J.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Rochelle Hahn* (*Allan G. Rodgers* with her) for the plaintiffs.

*Daniel W. Halston*, Assistant Attorney General, for the defendant.

*Allan G. Rodgers*, for Coalition for Basic Human Needs & others, amici curiae, submitted a brief.

O'CONNOR, J. In each of these three cases the Department of Public Welfare (department), which is the State agency that administers the Massachusetts Aid to Families with Dependent Children (AFDC) program, denied the plaintiff applicant's application for AFDC benefits. In separate administrative appeals, department referees concluded that the applicants were not "living with" their dependent children in homes maintained by the applicants as required by 106 Code Mass. Regs. § 303.230 (A) (1987). Therefore, they affirmed the department's denial of AFDC benefits. The applicants brought separate actions in the Superior Court seeking (1) review of the administrative decisions pursuant to G. L. c. 30A, § 14 (1990 ed.), (2) declaratory judgments pursuant to G. L. c. 231A (1990 ed.), and (3) injunctions pursuant to 42 U.S.C. § 1983 (1988). In Rawston's case, the department moved for summary judgment on the c. 30A claim and Rawston moved for summary judgment on the c. 231A and 42 U.S.C. § 1983 claims. After a hearing on those motions, a judge affirmed the department referee's decision and dismissed Rawston's complaint. In Dell Isola's and Reppucci's cases, the department moved for summary judgment on the c. 30A claims. Another judge allowed those motions and dismissed the c. 30A claims. The three plaintiffs appealed. We transferred the cases to this court on our own initiative and

consolidated them for oral argument. We now affirm the judgments that were entered in the Superior Court.

We discuss Rawston's case first. We begin with a recitation of uncontroverted facts which we have taken from a transcript of the evidence before the referee and from the referee's findings. Those findings and the transcript were before the judge who heard the summary judgment motion. Rawston is the mother of two minor children. During Rawston's marriage to the children's father, the family lived in the father's mother's home. Eventually, Rawston and the children's father were divorced. By the terms of the divorce decree, both parents had legal custody of the children. Rawston was awarded physical custody but, at least until she applied for AFDC, she did not exercise it. Following the divorce, the children remained with the father at his mother's home because Rawston intermittently was institutionalized for the treatment of alcohol abuse.

Following treatment, Rawston was unable to find an apartment for herself and the children. At the time she applied for AFDC, Rawston lived with her mother in an elderly housing apartment building at which children could not remain overnight. During the day Rawston picked the children up from school, cared for them after school, attended to their illnesses, took them to the doctor, disciplined them, did their laundry, and prepared some of their meals. Rawston was looking for an apartment that would accommodate her and the children, but, without AFDC benefits, she could not find any that she could afford. According to Rawston's affidavit, submitted to the judge in addition to the administrative record, the children's father moved out of his mother's house and Rawston rented rooms there following the department's denial of AFDC benefits. The department then considered Rawston eligible for AFDC. Accordingly, her appeal is only from the denial of benefits from March, 1989, until September, 1989.

AFDC is a joint Federal and State program of assistance for certain needy families with dependent children. See 42 U.S.C. §§ 601 et seq. (1988); G. L. c. 118 (1990 ed.). A

participating State must administer its program in a manner consistent with Federal law. *Rosado* v. *Wyman*, 397 U.S. 397, 408 (1970). By Federal statute, a "dependent child" is defined in relevant part as one "who has been deprived of parental support or care by reason of the . . . continued absence from the home . . . of a parent," and "who is living with" any of several listed relatives "in a place of residence maintained by one or more of such relatives as his or their own home." 42 U.S.C. § 606(a)(1). General Laws c. 118, § 1, defines "[d]ependent child" in the same way in all relevant respects as that term is defined in 42 U.S.C. § 606(a)(1). In this case, Rawston asserts that she is the relative that her children are living with in the place of residence maintained by her as her home. She makes this assertion despite the unchallenged fact that, when she filed her AFDC application, she was living with her mother in housing for the elderly at which the children were prohibited from staying overnight. Rawston bases her assertion on Federal and State administrative regulations which, she argues, expand the definition of the term "dependent child," beyond the immediately apparent meaning of the statutory definitions.

Title 45 C.F.R. § 233.90 (c) (1) (1991), provides: "Federal financial participation under title IV-A of the Social Security Act in payments with respect to a 'dependent child,' as defined in section 406 (a) of the Act, is available within the following interpretations: . . . . (v) *'Living with [a specified relative] in a place of residence maintained . . . as his . . . own home.'* (A) A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups: . . . . (B) A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting. . . ." (Emphasis in original.)

Consistent with those Federal requirements, 106 Code Mass. Regs. § 303.200 (1988), states that "[t]o be eligible, the dependent child must live with a relative responsible for his or her day-to-day care in a place of residence maintained as a home." Also, similar to 45 C.F.R. § 233.90 (c) (1) (v) (B)'s "living with" requirement, 106 Code Mass. Regs. § 303.230 (A) provides as follows:

"*303.230: Living Arrangement*

(A) *Requirements.* A dependent child must be living with his or her relative (as specified in Section 303.210) in a place of residence maintained by such relative as a home. A home is the family setting maintained or in the process of being established, as evidenced by assumption and continuation of responsibility for day-to-day care of the child by the relative with whom the child is living. The primary factors underlying the requirement of living with the relative are the child's presence in the home and the exercise by such relative of responsibility for care and control of the child. This requirement is met if:

(1) The child is physically present in the home and the grantee-relative exercises responsibility for day-to-day care of the child, even if the child is under the jurisdiction of a court (for example, receiving probation services or protective supervision) or if legal custody of the child is held by a public or private agency; or

(2) The child or relative is temporarily absent from the home, so long as the grantee-relative exercises responsibility for the care and control of the child. Absences include attendance at educational institutions or specialized schools, hospitalization, employment, visits, and similar situations of a temporary nature. Under this requirement:

> a. A child who spends time with a second parent as a result of a shared custody agreement is not excluded from eligibility. Regardless of a shared custody arrangement only one (1) of the child's natural or adoptive parents may be the eligible grantee-relative for that child at any one time.
>
> b. A child who is in the temporary care or custody of a public or private agency is not excluded from eligibility if the grantee-relative continues to exercise responsibility for the care and control of the child. However, only one relative may be the eligible grantee-relative for that child at any one time. . . ."

Under the Federal and State regulations, Rawston would be eligible for AFDC benefits only if her children were living with her in her home. Even if Rawston assumed and continued to exercise responsibility for the day-to-day care of the children, as she contends she did, she was not eligible because the children did not live with her. The regulations do not expand the definition of the term "dependent children" beyond the immediately apparent meaning of the statutory definition, as Rawston contends. The regulations make clear that the fact that the applicant relative lives with the children is not enough to qualify the relative for aid unless the relative also assumes responsibility for the children's care as is appropriate to family life, but, contrary to Rawston's contention, nothing in the regulations suggests that assumption of parental responsibility by one who does not reside with the children suffices. As 106 Code Mass. Regs. § 303.230 (A) states, "The primary factors underlying the requirement of living with the relative *are* the child's presence in the home *and* the exercise by such relative of responsibility for care and control of the child. This requirement is met if: (1) The child is physically present in the home *and* the grantee-relative exercises responsibility for day-to-day care of the child . . . ." (Emphasis added.) The requirement is stated in the conjunctive.

Title 106 Code Mass. Regs. § 303.230 (A) also provides that the "living with" "requirement is met if: . . . (2) [t]he child or relative is temporarily absent from the home, so long as the grantee-relative exercises responsibility for the care and control of the child. Absences include attendance at educational institutions or specialized schools, hospitalization, employment, visits, and similar situations of a temporary nature. Under this requirement: a. A child who spends time with a second parent as a result of a shared custody agreement is not excluded from eligibility."

The Massachusetts regulation bearing on temporary absence from the home, although more detailed than 45 C.F.R. § 233.90 (c) (1) (v) (b), is not unlike it. The Federal regulation simply provides that "[a] home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting." Both the Federal and State temporary absence provisions very clearly envision situations in which (1) the grantee relative and the children were physically present in their shared residence; (2) that residence was a home, based on the grantee relative's exercise there of responsibility for care and control of the child; and (3) the child or the grantee relative is absent from that home temporarily, intending to return to it, and the relative has retained care and control of the child. In Rawston's case, no such home was established until Rawston rented rooms at her husband's mother's house, from which time the department considers her eligible to receive AFDC benefits. While surely it is fairly arguable that society ought to provide individuals in the situation of Rawston and her children with the means to *acquire a place* in which to establish a family home, nothing in the Federal or State AFDC statutes or regulations, including the temporary absence provisions, suggests that the AFDC program has been designed to do that. Nothing in *Civetti* v. *Commissioner of Pub. Welfare*, 392 Mass. 474 (1984), relied on by Rawston, suggests otherwise.

We turn briefly from Rawston's petition for review of the department's decision pursuant to G. L. c. 30A, § 14, to her claims for declaratory relief under G. L. c. 231A and injunctive relief under 42 U.S.C. § 1983. Rawston moved for summary judgment on the latter two claims, and the judge ruled on that motion when she ruled on the department's motion for summary judgment on the c. 30A claim. The judge's memorandum of decision stated that the case was before her "on cross-motions for summary judgment." Her ultimate order that "the decision of the [department's] Appeal Referee dated June 27, 1989 is *AFFIRMED*," together with the entry of a judgment dismissing Rawston's complaint, demonstrates that the judge effectively granted summary judgment to the department on Rawston's motion for summary judgment on her G. L. c. 231A and 42 U.S.C. § 1983 claims. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974) ("Summary judgment, when appropriate, may be rendered against the moving party"). Although with respect to Rawston's c. 231A declaratory relief petition, a declaration of rights, rather than a dismissal, would have been appropriate, see *Mayor of Salem* v. *Warner Amex Cable Communications Inc.*, 392 Mass. 663, 669 (1984), we agree with the judge that Rawston was neither entitled to a declaration that she was entitled to AFDC benefits nor was she entitled to the injunction she sought pursuant to 42 U.S.C. § 1983. That agreement follows from our reasoning set forth above in connection with the G. L. c. 30A claim. Nothing in the materials submitted to the judge in addition to the administrative record (an affidavit and copies of ten decisions of the department's referees in other cases) demonstrates in any way that, even if the department is entitled to judgment on the c. 30A claim, as it is, Rawston is entitled to relief on her other claims.

We deal here with three cases. We have discussed the Rawston case and we move on now to the Dell Isola and Reppucci cases, both of which, like Rawston, involve administrative denial of AFDC benefits on the ground that the plaintiff applicants were not "living with" their dependent children in homes maintained by the applicants as required

by 106 Code Mass. Regs. § 303.230 (A). In the Dell Isola and Reppucci cases, the department moved for summary judgment on the applicants' c. 30A claims, and a judge allowed those motions and dismissed the c. 30A claims. No action was taken with respect to Dell Isola and Reppucci's G. L. c. 231A and 42 U.S.C. § 1983 claims.

The salient uncontroverted facts taken from the administrative record in Dell Isola's case are these: Dell Isola and her husband, the father of her infant son, separated in September, 1988. They stipulated in the Probate and Family Court that they should have joint legal custody of the child and that, at least until February 9, 1989, the child would live with the father at his parents' home. A judge of that court entered a temporary order to that effect. The mother was to have liberal visitation rights. On February 9, the parties stipulated to joint legal custody and physical custody in the father with the mother having rights of visitation at the maternal grandmother's home on alternate weekends from 8 A.M. Friday until noon on Sunday, and on every Monday, Wednesday, and Friday from 8 A.M. until 2 P.M. Then, on March 21, 1989, a judge of the Probate and Family Court entered a temporary order providing that the paternal grandparents would have "the care and custody," that, is, physical custody, of the child, and that the previously established visitation schedule would remain in effect. During those visits, Dell Isola exercised exclusive care and control of the child.

The March 21 Probate and Family Court order was in effect when the department referee conducted hearings in April and June, 1989 to determine whether Dell Isola continued to be eligible for AFDC benefits. As a result of those hearings, the referee rejected Dell Isola's contention the child was in her care and control during the court-approved visits and that, therefore, Dell Isola continued to be eligible for assistance. He concluded that, "since the significant responsibility for the child's care [was] temporarily with the grandparents . . . the child [could not] be considered as still living with [Dell Isola]." Subsequently, a judge of the Superior Court allowed the department's motion for summary judg-

ment on the G. L. c. 30A claim, thus affirming the department's decision.

The judge's ruling was correct essentially for the reasons we put forth in connection with Rawston's case. As we noted there, 106 Code Mass. Regs. § 303.230 (A), which is consistent with Federal law and G. L. c. 118, provides that "[a] dependent child must be living with his or her relative . . . in a place of residence maintained by such relative as a home. A home is the family setting maintained or in the process of being established, as evidenced by assumption and continuation of responsibility for day-to-day care of the child by the relative with whom the child is living." The quoted portion of § 303.230 (A) contains two requirements: (1) the child and the applicant relative must live together in a residence, and (2) that residence must be maintained as the family setting or be in the process of becoming the family setting as evidenced by the relative's assumption of responsibility for the day-to-day care of the child. As the department states in its brief, "[t]he definition of 'home' serves to stress, not that less is required than that the child is living with a relative in a place of residence, but that more is required, i.e., that the residence in fact be the family setting where the child is actually cared for." When these two requirements have been met, an applicant and child may be "living together" for purposes of AFDC eligibility despite the temporary absence of the child or the applicant from the home. 106 Code Mass. Regs. § 303.203 (A) (2). Dell Isola claims that her child is temporarily absent from Dell Isola's current residence. There is no indication, however, that Dell Isola's current address was ever a home as evidenced by the residence there of Dell Isola and the child and the exercise of care and control there over the child by Dell Isola. Absent such a home, Dell Isola cannot take advantage of the temporary absence provisions of 106 Code Mass. Regs. § 303.230 (A) (2). Accordingly, she cannot be living with her child.

The third case is Reppucci's case, in which the issue was whether the department could properly terminate her AFDC benefits on the ground that there was no dependent child liv-

ing with her. The relevant facts again are taken from the administrative record which was before the judge who heard the department's motion for summary judgment. Reppucci is the mother of a minor son. She and the child's father were divorced by an order which provided, among other things, that the father would "have the legal care and custody" of the child, and that "[a]ll visitation for [Reppucci was] to be supervised for the next six (6) months." Subsequently, the parties entered into a court-approved stipulation which allowed Reppucci to receive visits from the child on Sundays from 11 A.M. to 5 P.M., on alternate Mondays from 2:30 P.M. to 6 P.M., and a portion of Easter Sunday and Thanksgiving Day. Actually, the child visited Reppucci two or three afternoons per week and often overnight on weekends. During those times, Reppucci provided food and clothing to the child. Reppucci maintained an apartment with a bedroom for the child's use.

The referee concluded that the child did not live with Reppucci within the requirements of the applicable regulations. He rejected Reppucci's contention that she met the requirements of 106 Code Mass. Regs. § 303.230 (A). Reppucci had argued that she met those requirements because, within the meaning of § 303.230 (A) (2), "the child [was] temporarily absent from [Reppucci's] home" from time to time as a result of a shared custody agreement with the child's father. See 106 Code Mass. Regs. § 303.230 (A) (2) (a). In allowing the department's motion for summary judgment, the judge agreed with the referee, as do we, that, within the meaning of the relevant regulations, the child lived with the father, not with the father and mother. Reppucci claimed that her child was temporarily absent from Reppucci's residence at the time of her AFDC application. This residence, however, was never a home at which she and her child lived together and at which she exercised care and control over her child. Accordingly, in the absence of such a home, neither Reppucci's visitation rights nor her actual visits constituted a "shared custody agreement" resulting in the child's being

"temporarily absent" from a home maintained by Reppucci as a family setting.

*Judgments affirmed.*